PETER A. ORVILLE, P.C.
PETER A. ORVILLE, ESQ.
*Attorneys for Debtors*
30 Riverside Drive
Binghamton, New York 13905

MELVIN & MELVIN, PLLC
LOUSE LEVINE, ESQ.
*Attorneys for Manufacturers
 and Traders Trust Company*
Seventh Floor
217 South Salina Street
Syracuse, New York 13202-1390

MARK W. SWIMELAR, ESQ.
*Chapter 13 Trustee*
250 South Clinton Street
Suite 203
Syracuse, New York 13202

In Re:  Peter and Renee King
        Chapter 7 Case No.: 08-61922

## LETTER-DECISION AND ORDER

Before the Court is the motion of Peter and Renee King ("Debtors") to disallow in part the claim of Manufacturers and Traders Trust Company ("M&T Bank") pursuant to 11 U.S.C. § 502(b)(1) and Federal Rule of Bankruptcy Procedure 3007(a).  The Court has jurisdiction to decide this core matter pursuant to 28 U.S.C. §§ 1334(a) and 157(b)(2)(B).  M&T Bank asserts that it holds an unsecured nonpriority claim in the aggregate amount of $59,399.25 for monies loaned in multiple transactions to Debtors' failed restaurant business, The Ramblin' Pig, LLC, which loans Mr. King personally guaranteed.  Debtors do not dispute that Mr. King is liable to M&T Bank in connection with such loans, but they argue that M&T Bank's claim should be reduced by $19,000.00, for the reason that M&T Bank failed to repossess the restaurant equipment that collateralized the loans.  After consideration of the parties' oral arguments and

letter briefs submitted in this matter, the following now constitute the Court's findings of fact and conclusions of law to the extent required by Federal Rule of Bankruptcy Procedure 7052.

The parties' factual accounts regarding pre-petition events differ to some extent. It is undisputed that Debtors operated a restaurant business out of leased premises in Greene, New York, prior to filing for relief under Chapter 13 of the United States Bankruptcy Code on August 13, 2008. Debtors ceased doing business on August 3, 2008. According to Debtors, they made arrangements with an M&T Bank representative to meet and turnover the collateralized equipment in partial satisfaction of the debt due M&T Bank before Debtors vacated the leased premises. They allege that the M&T Bank representative never appeared to inspect and take possession of the equipment and that the landlord, Jason Bonsignore, subsequently changed the locks and removed the equipment from the leased premises. Debtors did not initiate a state court action or list as a potential cause of action on their statement of financial affairs a cause of action under state law against Mr. Bonsignore.[1] As a result of M&T Bank's inaction, Debtors argue that M&T Bank failed to act in good faith to repossess the collateral, such that it forfeited its right as a secured party under Uniform Commercial Code ("UCC") § 9-601(c) to simultaneously exercise its available remedies against Mr. King in the event of his default. Debtors further allege that, had they known that M&T Bank would not repossess the collateral, they would have made arrangements to remove the equipment from the leased premises, and they would have

---

[1] Mr. Bonsignore filed a proof of claim in Debtors' case on October 16, 2009 (Proof of Claim No. 38-1), in the amount of $24,791.10 for lease damages, including unpaid rent and utility services, but the Chapter 13 Trustee, Mark W. Swimelar, Esq., filed a tardiness objection on July 2, 2010 (ECF No. 125). The Clerk's Office set the bar date in Debtors' case for December 16, 2008. (ECF No. 7.) The Trustee's motion was granted by Order issued September 13, 2010. (ECF No. 139.) Due to the nature of the Trustee's objection, no other defenses to liability were raised and it remains unknown whether Mr. Bonsignore retained any of the collateral to which M&T Bank had a superior interest. Debtors did file a motion directed at Mr. Bonsignore to compel disclosure of the equipment and turnover of the equipment on July 21, 2009. (ECF No. 91.) Mr. Bonsignore filed a response indicating that he had no knowledge as to the whereabouts of the equipment, but that none of the equipment remained at his property when he appeared to inspect the same after Debtors' vacated the premises. (ECF No. 94.) Debtors' motion was withdrawn on December 2, 2009.

auctioned it in order to turn the proceeds of sale over to M&T Bank in partial payment of the amount owed. Debtors contend that the value of the equipment on the date of its alleged conversion by Mr. Bonsignore was approximately $19,000.00.

M&T Bank defends Debtors' challenge to its claim on multiple grounds. Factually, M&T Bank asserts that it never made an appointment with Debtors to recover the collateral at a date and time certain, and that it remained at all times Debtors' obligation to safeguard the equipment. M&T Bank faults Debtors' position as being both factually and legally defective because even if M&T Bank had agreed to visit the leased premises to inspect the collateral, its failure to do so would not have given rise to a cause of action by Mr. King under either a contract or tort theory under New York law. Further, even if the statement allegedly made by the M&T Bank representative were actionable, M&T Bank suggests that Mr. King could not assert the same as a defense because (1) he knew that M&T Bank was not required to repossess the equipment under the parties' security agreements and (2) he was not justified in relying upon the alleged statement. Finally, M&T Bank points out that even if Debtors were allowed to reduce its claim to the extent of the fair market value of the collateral that Debtors allege was converted by Mr. Bonsignore, Debtors have failed to submit an itemized inventory or evidence of the fair market value of the equipment at the time of default.

Notwithstanding that the issue of whether a party acted in good faith is generally a question of fact, the parties submitted this matter to the Court as a question of law on whether a secured creditor is obligated under the UCC to pursue or repossess the collateral securing its lien before it may enforce a debt. Thus, while questions of fact exist regarding the current location and/or disposition of the equipment, the parties ask the Court to resolve Debtors' claim objection in order to advance Debtors' Chapter 13 case. It appears from the Court's review of the docket

in this case that the Chapter 13 Trustee has made, and the Court has adjudicated, several other objections to claims filed, such that this may be the final hurdle in the Debtors' claims process.

After the commencement of a bankruptcy case, a debtor's creditors are entitled to file a proof of claim documenting their right to receive payment from the debtor's estate. *In re Peterson*, 2009 Bankr. LEXIS 2009, at *10 (Bankr. N.D. Ill. Apr. 10, 2009) (citing *Travelers Cas. and Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 449 (2007)); *see also* 11 U.S.C. § 101(5)(A) (2006); FED. R. BANKR. P. 3003(c)(1).[2] Once a proof of claim has been filed under 11 U.S.C. § 501, it "is deemed allowed, unless a party in interest objects." 11 U.S.C. § 502(a) (2006). A proof of claim that complies with the filing and documentary requirements of Federal Rule of Bankruptcy Procedure 3001 and Official Form 10 "shall constitute prima facie evidence of the validity and amount of the claim."[3] FED. R. BANKR. P. 3001(f). The objecting party bears the burden of putting forth sufficient evidence to negate the prima facie validity of the claim. *Primavera Familienstiftung v. Askin*, 130 F.Supp. 2d 450, 541 (S.D.N.Y. 2001) (citing *In re St. Johnsbury Trucking Co.*, 206 B.R. 318, 323 (Bankr. S.D.N.Y. 1997), *aff'd* 221 B.R. 692 (S.D.N.Y. 1988), *aff'd*, 173 F.3d 846 (2d Cir. 1999)). "Where the debtor's defense to the claim . . . is one with respect to which the debtor would have the burden of proof in a non-bankruptcy forum, the debtor must carry that same burden of proof in connection with an objection to claim" in bankruptcy. *Johnson v. Nat'l City Mortg. Co. (In re Johnson)*, 2009 Bankr. LEXIS 2956, at *14–15 (Bankr. E.D. Tex. Sept. 11, 2009) (citing cases). "The ultimate burden of persuasion to

---

[2] A "claim" is defined under Title 11 as "a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A) (2006). Pursuant to Federal Rule of Bankruptcy Procedure 3003(c)(1), any creditor or indenture trustee may file a proof of claim within the time fixed by the Court. M&T Bank timely filed its proof claim on August 26, 2008 (Proof of Claim 5-1).

[3] The Court's independent review of M&T Bank's claim reveals that M&T Bank did not attach documentary evidence so as to give rise to a rebuttable presumption of validity in the first instance, and Debtors' Amended Schedule F does not list M&T Bank so as to obviate the need for further documentary support (ECF No. 24). The Court will, however, afford the claim as much given Debtors' admission of liability in some amount.

prove the loss claimed, however, remains with the claimant." *Primavera*, 130 F.Supp. 2d at 540 (citing *St. Johnsbury Trucking Co.*, 206 B.R. at 323).

Debtors objection in this case is premised upon the first of nine exceptions to validity of a claim enumerated in 11 U.S.C. § 502(b). Subsection (b)(1) specifically provides for disallowance of a claim to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b)(1) (2006). This provision is understood to mean that "any defense to a claim that is available outside of the bankruptcy context is also available in bankruptcy." *Peterson*, 2009 Bankr. LEXIS 2009, at *11 (citing *Travelers*, 549 U.S. at 450 (internal citation omitted)).

Debtors acknowledge that the applicable, substantive law governing their objection is Revised Article 9 of the UCC or, more specifically, UCC § 9-601(c), which was enacted in New York under the Revised New York Uniform Commercial Code ("NY UCC"), effective July 1, 2001. *See* N.Y. U.C.C. §§ 9-601, 9-701 (Consol. 2010). Debtors admit that UCC § 9-601(c), and thus the identical language of the NY UCC provision, allows a secured creditor to simultaneously exercise its rights, including, but not limited to, foreclosure or initiation of a suit to reduce its claim to judgment, when a debtor defaults. Debtors argue, however, that the simultaneous exercise of remedies is only permitted when the secured party acts in good faith. Here, Debtors allege that M&T Bank did not act in good faith because it failed to (1) appear to inspect the equipment and (2) either repossess the equipment or notify Debtors of its intent not to repossess the equipment.

Debtors have not cited, and this Court has not located, any case law that supports their position. It is universally understood that the UCC does not require a secured creditor to elect a

remedy. *SFG Commer. Aircraft Leasing, Inc. v. N59CC, LLC*, 2010 U.S. Dist. LEXIS 20931, at *8 (N.D. Ind. Mar. 8, 2010). Rather, the rights afforded a secured creditor are cumulative and may be exercised simultaneously. N.Y. U.C.C. § 9-601(c). Accordingly, a secured creditor "may reduce a claim to judgment, foreclose, or otherwise enforce the claim [or] security interest . . . by available judicial procedure." *Id.* § 9-601(a)(1).

In support of their position, Debtors rely exclusively on Comment 5 to Revised UCC § 9-601, which states that the simultaneous exercise is permitted "if the secured party acts in good faith." 1 B-8 Secured Transactions Under the UCC § 8.03 (MB 2010). While the NY UCC Comments do not include identical language, "good faith" is defined in the NY UCC as "honesty in fact and the observance of reasonable commercial standards of fair dealing." N.Y. U.C.C. § 9-102(a)(43). Even assuming it were applicable in New York, the Court does not read this Comment as bolstering Debtors' position, which seems to be that M&T Bank was somehow obligated to repossess the collateral in the first instance, but rather reads it to mean that if a secured creditor opts to dispose of collateral, then it must act in good faith to maximize returns on that collateral. Further, it cannot act in bad faith and obtain a double recovery. *See* 1B-8 Secured Transactions Under the UCC § 8.03 (MB 2010) (A creditor cannot, for example, combine attempts to dispose of collateral under Article 9 and obtain a judgment for the total debt, or obtain a deficiency judgment without first disposing of the collateral.) Good faith, therefore, is a principal limitation on the secured party's right to dispose of collateral. 68A Am. Jur. 2d Secured Transactions § 594 (citing cases).

M&T Bank, however, chose not to repossess the collateral, whether consciously or by default given that it had a limited window of time in which to do so while Debtors still occupied the leased premises. The NY UCC provides secured creditors with flexible remedies, and it

would be inconsistent with the principle of flexibility of remedies and the NY UCC's authorization for the simultaneous exercise of remedies, if not also with the language of the parties' security agreements,[4] to require M&T Bank to repossess the collateral rather than permit it to sue on the debt and retain its security interest while allowing Debtors to retain the collateral. Debtors' position, therefore, must be rejected for the reason that it would impose a duty on M&T Bank that is contrary to the provisions of the NY UCC.

For this reason, Debtors' objection to M&T Bank's proof of claim is hereby denied.

IT IS SO ORDERED.

Dated at Utica, New York
this 20th day of October 2010

/s/ Diane Davis_____
DIANE DAVIS
United States Bankruptcy Judge

---

[4] The underlying loan documents are not part of the record before the Court.